IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-01746-WYD-KMT

ELAINE SPENCER MARR, and
ELLIOTT PAUL MOORE,

    Plaintiffs,

v.

LARRY H. HUGHES,
TOMMIE R. HUGHES, and
THE COLORADO DEPARTMENT OF TRANSPORTATION,

    Defendants.

---

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Kathleen M. Tafoya**
**United States Magistrate Judge**

This case comes before the court on three pending motions: 1) "Defendant Larry and Tommie Hughes' Motion to Dismiss" [Doc. No. 7, filed September 10, 2007], to which Plaintiffs responded with "Petitioners' Response to Defendants Larry H. Hughes' and Tommie R. Hughes' Motion to Dismiss" ("Pet. Rsp. Hughes" [Doc. No. 29, filed November 30, 2007]); 2) "Defendant Colorado Department of Transportation's Motion to Dismiss" [Doc. No. 8, filed September 10, 2008] to which Plaintiffs responded with "Petitioners Response to Defendant Colorado Department of Transportation's Motion to Dismiss" ("Pet. Rsp. CDOT" [Doc. No. 19, filed October 30, 2007]). Defendant Colorado Department of Transportation (hereinafter "CDOT") filed a Reply on November 14, 2007 [Doc. No. 24]; and 3) "Petitioners' Motion for

Summary Judgment" [Doc. No. 17, filed October 30, 2007] to which only CDOT responded on November 19, 2007 [Doc. No. 25].

## I. Background

Plaintiffs Elaine Spencer Marr and Elliott Paul Moore, appearing pro se, are the owners of a 14 foot wide easement granting ingress and egress from Plaintiffs' farmland to U.S. Highway 50. (Petition For Redress ["Petition", Doc. No. 1], p. 6, ¶14; p. 37, ¶¶92-3.) The Hughes Defendants own an adjoining tract of land. (*Id.* at p. 38, ¶94.) Marr and Moore's easement "runs straight along the eastern border of the Hughes' property, terminating at Highway 50." (Petition, Addendum A, Findings and Verdict on Trial to Court ("Add. A"), p. 1.) The easement grants rights of ingress and egress and "has, for at least 25 years, a utility pole situated approximately 5 feet into the easement from its eastern boundary near its southern terminus." (*Id.*)

In 2002, the Hughes sought a permit from CDOT for a change in access use. (Petition, pp. 39-42.) The access permit consolidated the direct access to Highway 50 enjoyed by both the dominant (Hughes) and servient (Marr/Moore) estates. ("Add. A", p. 2.) The permit, however, also required that part of Plaintiffs' easement, an existing curb-cut facilitating access to Highway 50, be closed. (Petition, p. 42, ¶¶104-105). It is undisputed the Hughes did not obtain consent from the plaintiffs before going to CDOT for the approved permit, and further, it is undisputed that Plaintiffs were not consulted during the review process or prior to approval being granted for the permit relocation. ("Pet. Rsp. Hughes" p. 11.) CDOT granted an access permit to Hughes on September 10, 2002. ("Add. A," p. 2.)

Plaintiffs filed suit in state court on July 12, 2004 claiming trespass damages and injunctive relief for what was characterized as Hughes' unilateral alteration of the easement location. (Petition for Redress, p. 7-8, ¶ 17, 20.) The court summarized the plaintiffs' claims as

> Ms. Marr seeks legal and equitable relief. she asks the court for injunctive relief for the removal of the Hughes' obstructions to her easement, for injunctive relief that the easement may not be disturbed, for damages for trespass on Tract 3, for declaratory relief that the easement is to be honored according to its terms, for injunctive relief that CDOT revoke the access permit and restore access consistent with the easement, for Rule 105 C.R.C.P. relief adjudicating all rights relating to the easement, and for exemplary damages against Mr. Hughes.

("Add. A," p. 3.)

After a trial, on September 8, 2005, the Colorado District Court for Chaffee County issued its findings and ruling. ("Add. A.") The court found that although the Marr/Moore plaintiffs did not consent to the moving of the easement, Mr. Hughes had sent Marr a copy of the face sheet of the second application to CDOT showing the proposed realignment of the easement. ("Add. A," p. 2.) The court also found that during the construction of the new easement, including paving the road, contractors had inadvertently damaged the Marr/Moore property by removing a culvert from a water ditch and knocking down portions of fencing. (*Id.*) Although Mr. Hughes and Ms. Marr discussed the relocation of the easement on several occasions during the construction beginning in April 2003, Ms. Marr continued to express her refusal to consent to a change of the location. (*Id.*, p. 3.)   The court further found that Mr. Hughes admitted he willfully violated the prior easement held by the plaintiffs and constructed improvements such as curbs, sidewalk, water meter, landscaping and signage which rendered the easement unusable. (*Id.*)

The Court found the Hughes Defendants had violated the easement and therefore had committed a trespass and awarded Plaintiffs $300 in damages for the repair of the fence and replacement of the culvert, and $1.00 in exemplary damages because Mr. Hughes' actions in violating the easement were willful. (Petition, p. 8, ¶¶ 20-1; "Add. A," p. 5.) The court noted the Hughes Defendants caused no harm to the easement and in fact, the easement as realigned was more valuable in that it now was paved and no longer obstructed by any utility poles. ("Add. A," p. 4.)  The court also found, however, that Plaintiffs had no right to access Highway 50 at the specific location of the original easement and that they had no right to <u>unreasonably</u> interfere with the superior right to the land held by Hughes. ("Add. A," 3-4.)(emphasis added).

The court granted partial injunctive relief against Defendants Hughes and ordered the Hughes to execute and record a grant of an easement over Tract 3 in accord with the improvements made. (*Id*., p. 5.) Defendants Hughes were ordered to pay damages as noted and the Hughes were permanently enjoined from any acts which would cause impairment or damage to the newly relocated easement benefitting the Marrs/Moore property. (*Id*.) The court denied the plaintiffs' request for declaratory relief and, in weighing the "benefits and disadvantages to the dominant and servient estates from the relocation, the conduct of the parties, the cost of restoration relative to the benefit gained and actual damages" found that the cost of $5,000-$6,000 to restore the original easement was unreasonable, especially since it "would result in no benefit to Ms. Marr." (*Id.*)  The court declined to order that the original easement be restored after this careful analysis. (*Id.*)

The court completely rejected all Plaintiffs' claims against CDOT finding there was "no evidence that CDOT acted contrary to statute or regulation and therefore no proof that it failed to do a duty it is obligated to do or did an act it was not lawfully permitted to do." (*Id.*, p. 5; Petition, ¶23).

Plaintiffs filed a Petition for Writ of Certiorari with the Colorado Supreme Court on May 23, 2006. (Petition, p. 73, ¶294; Addendum F.) The Court transferred the Petition to the Colorado Court of Appeals who dismissed the appeal as untimely. (Id. at p. 74-75, ¶298-99; Addendum H.) The Colorado Supreme Court later affirmed the dismissal. (Id. at p. 75, ¶300; Addendum I.)

Plaintiffs' claims in the instant action include, apparently, "the intentional denial to Petitioners of their United States and Colorado Constitutional Right of due process when Petitioners' property was taken and damaged without Notice to Petitioners by the Defendants Hughes and CDOT," (Pet. Mot. S.J., p. 3.) Plaintiffs cite to Colorado Revised Statutes, Title 38 and to Title 42, United States Code, § 1983 as the grounds to pursue this federal case. ("Pet. Rsp. Hughes," p.2, 4.) In addition to the complaints about the actions of the Hughes Defendants which are the same as presented to the Chaffee County State District Court, Plaintiffs complain CDOT's access permit granted in favor of the Hughes Defendants unconstitutionally denied them of their property interest. (Petition, p. 4, ¶¶ 10, 17.)

## II. Standard of Review

### A. Pro Se Plaintiff

The plaintiffs are proceeding *pro se*. The court, therefore, "review[s] [their] pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). *See also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers"). However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). *See also Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues"). The plaintiffs' *pro se* status does not entitle her to application of different rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

### B. Fed. R. Civ. P. 12(b)(1)

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on

the merits of a plaintiff's case. Rather, it calls for a determination that the court lacks authority to adjudicate the matter, attacking the existence of jurisdiction rather than the allegations of the complaint. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). A court lacking jurisdiction "must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking." *See Basso*, 495 F.2d at 909.

A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). When considering a Rule 12(b)(1) motion, however, the Court may consider matters outside the pleadings without transforming the motion into one for summary judgment. *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). Where a party challenges the facts upon which subject matter jurisdiction depends, a district court may not presume the truthfulness of the complaint's "factual allegations . . . [and] has wide discretion to allow affidavits, other documents, and [may even hold] a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Id*.

   C.  *Fed. R. Civ. P. 12(b)(6)*

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6) (2007). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that

7

the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

Thus, all well-pled factual allegations in a complaint are accepted as true and construed in the light most favorable to the plaintiff. *Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007). Further, the court is to make all reasonable inferences in the plaintiff's favor. *Timpanogos Tribe v. Conway*, 286 F.3d 1195, 1204 (10th Cir. 2002). In doing so, the Court distinguishes well-pleaded facts from conclusory allegations. *Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002) (citations omitted).

In *Bell Atlantic Corp. v. Twombly*, — U.S. —, 127 S. Ct. 1955, 1974 (2007), the Supreme Court articulated a new "plausibility" standard, under which a complaint must include "enough facts to state a claim to relief that is plausible on its face." 127 S. Ct. at 1974. The issue in reviewing the sufficiency of a plaintiff's complaint is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his claims. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) *(overruled on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982)). In evaluating a 12(b)(6) motion to dismiss, it is appropriate to look to whether the plaintiff has alleged each element necessary to establish a prima facie claim on which relief can be granted. *See Ruiz*, 299 F.3d at 1182-83; *Sutton v. United Air Lines, Inc.*, 130 F.3d 893, 902-903 (10th Cir. 1997). Although a plaintiff does not need to state each element of his claim precisely, he must plead minimal factual allegations on those material elements that must be proved. *See* Fed. R. Civ. P. 8(a); *Hall*, 935 F.2d at 1110.

### D. *Summary Judgment*

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (2006); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works*, 36 F.3d at 1518 (citing *Celotex*, 477 U.S. at 325). The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see* Fed. R. Civ. P. 56(e) (2006). A fact in dispute is "material" if it might affect the outcome of the suit under the governing law; the dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997) (citing *Anderson*, 477 U.S. at 248). The court may consider only admissible evidence when ruling on a summary judgment motion. *See World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985). The factual record and reasonable inferences therefrom

are viewed in the light most favorable to the party opposing summary judgment. *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998) (citing *Concrete Works*, 36 F.3d at 1517).

### III. *Analysis*

The plaintiffs admit that this action is based on the same facts as the previous state action. Plaintiffs quote at length from the trial transcripts of the Chaffee County trial in their responses to the motions to dismiss and are very clear that the sole variance between the cases is that "[n]o one mentioned Plaintiffs Constitutional rights of due process had not be complied with prior to the Defendants Hughes and CDOT's taking of their property." (Pet. Rsp. Hughes at 21.) They now claim, "Their attorney failed to protect their constitutional rights; said rights were never addressed, not to the Plaintiff/Petitioners by their attorney nor by the Court." (*Id.* at 10.) They claim the state case was different because "[t]he state case was pursued solely as as (sic) one of trespass and damages." Of course, their own Petition and the court's order contradicts this statement in that the case contained claims (and awards) for injunctive relief and for damages as a result of the same set of facts which are presented to this court. The difference between the two cases is only the newly claimed grounds for relief, violation of constitutional due process brought pursuant to Title 42, U.S.C. § 1983.

#### A. *Res Judicata, Claim Preclusion and Collateral Estoppel*

As noted, the plaintiffs do not assert additional facts but only additional grounds in support of their petition to this court to restore their original easement and require the Hughes defendants to tear down all improvements which now impede the use of the original easement; a

10

use, incidentally, which would violate the permit issued by CDOT because there would be two points of access to Highway 50 rather than one. The plaintiffs state,

> [p]laintiffs are not seeking a new trial against these Defendants on these same issues do not want one and are hoping that the Court will not order one. The essential facts have already been established in the sworn testimony in the Reporters' Transcript of the District Court trial that has already taken place and the Plaintiffs' Trial Exhibits previously submitted.

(Pet. Rsp. Hughes, p. 22.) Plaintiffs state that they want a "ruling from this Court . . . which confirm Petitioners' claim that they were indeed denied their assertions that they were denied their United States and Colorado's Constitutional right of due process . . . ." *Id.* In fact, however, the court in Chaffee County agreed that the plaintiffs rights were willfully violated by the Hughes defendants and that the plaintiffs were never consulted or provided any due process prior to Mr. Hughes' violation of the easement. ("App. A," p. 3.) The plaintiffs have already received the "declaration" they so desire in this case from District Court Judge Charles M. Barton. Judge Barton said, "The court understands Ms. Marr's position. Her legal right to rely upon the express terms of the easement was willfully trampled upon by Mr. Hughes." (Id., p. 4) What the plaintiffs really seek by filing this new case is a different remedy than Judge Hughes was willing to apply in the state court action.

Though sometimes used to refer to the narrower concept of claim preclusion, res judicata traditionally subsumes both claim preclusion and issue preclusion, which is sometimes called collateral estoppel. *See e.g. Carter v. City of Emporia*, 815 F.2d 617, n 2 (10th Cir. 1987). "The doctrine of res judicata, or claim preclusion, will prevent a party from relitigating a legal claim that was <u>or could have been</u> the subject of a previously issued final judgment." *MACTEC, Inc. v.*

11

*Gorelick*, 427 F.3d 821, 831 (10th Cir.2005)(emphasis added). *See Allen v. McCurry*, 449 U.S. 90, 94 (1980). Res judicata, under Colorado state law, "bars relitigation not only of all issues actually decided, but of all issues that might have been decided." *Pomeroy v. Waitkus*, 517, P. 2d 396, 399 (1974); *State Engineer v. Smith Cattle, Inc.*, 780 P.2d 546, 549 (Colo.,1989). Since the underlying case arose in the state of Colorado, Colorado law will determine the limits of res judicata. "Res judicata constitutes an absolute bar only when there is in both the prior and subsequent suits identity of subject matter, identity of the cause of action, identity of parties to the action, and identity of capacity in the persons for which or against whom the claim is made." *City of Westminster v. Church,* 445 P.2d 52, 55 (1968). Of paramount importance to this case is that in Colorado, the 'same claim or cause of action' "is bounded by the injury for which relief is demanded, <u>and not by the legal theory on which the person asserting the claim relies</u>." *State Engineer v. Smith Cattle, Inc.*, 780 P.2d 546, 549 (Colo., 1989)(emphasis added); *Hildebrand v. Dart Indus., Inc.*, 640 F.2d 289 (10th Cir.1981) (action barred by res judicata where plaintiffs attempted to cure statute-of-limitations defect in fraudulent-inducement claim by adding count for fraudulent termination of distributorship agreement).[1]

The two cases before the Court are identical. The parties and subject matter are the same. The only difference in this federal action is the legal theory upon which the plaintiffs now wish to proceed. *See Nwosun v. General Mills Restaurants, Inc.*, 124 F.3d 1255, 1257 (10th Cir.

---

[1]Federal law has almost identical requirements concerning the application of claim preclusion in the Tenth Circuit and requires: "(1) a judgment on the merits in the earlier action; (2) identity of the parties or their privies in both suits; and (3) identity of the cause of action in both suits." *Yapp v. Excel Corp.*, 186 F.3d 1222, 1226 (10th Cir. 1999).

12

1997) ("[A] cause of action includes all claims or legal theories of recovery that arise from the same transaction, event, or occurrence."). What constitutes the same transaction or series of transactions is "to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Restatement (Second) of Judgments* § 24 (1982).

One of the main policy considerations underlying res judicata is the interest in bringing litigation to an end. *Nwosun*, 124 F.3d at 1258; *B-S Steel of Kansas, Inc. v. Texas Industries, Inc*., 327 F. Supp. 2d 1252, 1258 (D. Kan. 2004). The final "judgment puts an end to the cause of action, which cannot again be brought into litigation between the parties upon any ground whatever." *Commissioner v. Sunnen*, 333 U.S. 591, 597 (1948). *See Chicot County Drainage District v. Baxter State Bank*, 308 U.S. 371, 375, 378 (1940); *John v. United States,* 77 Fed. Cl. 788, 818 (Fed. Cl. 2007). "By preventing repetitious litigation, application of res judicata avoids unnecessary expense and vexation for parties, conserves judicial resources, and encourages reliance on judicial action." *Nwosun* at 1258.

The plaintiffs in this case are attempting to pick low-hanging fruit from the tree of jurisprudence and obtain the forbidden second bite of the apple. I therefore recommend that Plaintiffs' Petition for Redress be dismissed as barred by the principles of claim preclusion and res judicata.

Defendants also raise in their Motions to Dismiss that the Petition is likely barred by the two year statute of limitations in §1983 cases and that the claims are precluded by the *Rooker-*

*Feldman* Doctrine and by the Eleventh Amendment. Although these claims may well be meritorious, because the issue of claim preclusion is so clear, this court will not address those issues as part of its recommendation of dismissal.

### B. *Summary Judgment*

The plaintiffs cite to the transcripts of the Chaffee County case and state that based on that evidence they should be granted summary judgment in this case. Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The moving parties in this matter are the plaintiffs and they have not shown they are entitled to judgment as a matter of law since their claims are barred pursuant to Fed. R. Civ. P. 12(b)(1) and (6).

WHEREFORE, for the foregoing reasons, I respectfully

**RECOMMEND** that

1. "Defendant Larry and Tommie Hughes' Motion to Dismiss" [Doc. No. 7] be GRANTED.

2. "Defendant Colorado Department of Transportation's Motion to Dismiss" [Doc. No. 8] be GRANTED.

3. "Petitioners' Motion for Summary Judgment" [Doc. No. 17] be DENIED.

### ADVISEMENT TO THE PARTIES

Within ten days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1);

Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Property*, 73 F.3d at 1059-60 (a party's objections to the Magistrate Judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the District Court or for appellate review); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 15th day of August, 2008.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge